IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CERTAIN INTERESTED UNDERWRITERS SUBSCRIBING TO POLICY NO. MC-FAL-1000866, <br><br> Plaintiffs, <br><br> – against – <br><br> COYOTE LOGISTICS, LLC, LIV ENTERPRISES, INC., and RXO, INC., <br><br> Defendants. | Case No. 24-cv-___ <br><br> **COMPLAINT** <br><br> (Request for Jury Trial) |

Plaintiffs, Certain Interested Underwriters Subscribing to Policy No. MC-FAL-1000866 ("Underwriters" or "Plaintiffs"), by and through their undersigned counsel, as and for their Complaint against Defendants Coyote Logistics, LLC ("Coyote"), LIV Enterprises, Inc. ("LIV"), and RXO, Inc. ("RXO") (collectively "Defendants") alleges upon information and belief as follows:

## INTRODUCTION

1. This action arises from the loss and non-delivery of a Surface Active Foam Fractionation System ("SAFF" or "Cargo") that was intended to be transported by interstate motor carriage from Mooresville, North Carolina to Sandwich, Massachusetts (the "Shipment").

1

2. On or about December 3, 2023, during transportation and before the Cargo was delivered to Sandwich, Massachusetts, the Cargo was physically damaged when the defendants caused the Cargo to collide with an overpass bridge on Interstate 95 northbound, east of New Haven, Connecticut, between Exits 61 and 62 in Connecticut (the "Incident").

## PARTIES

3. At all times relevant hereto, Underwriters were and now are foreign insurance companies and/or Lloyd's syndicates in the London market subscribing to a stock throughput policy of insurance, unique market reference No. MC-FAL-1000866 (the "Policy"), effective for the period of August 25, 2023 to December 15, 2023.

4. At all times relevant hereto, Coyote was and now is a business entity organized and existing under Delaware law, with an office and place of business at 55 Glenlake Parkway NE, Atlanta, Georgia 30328.  Coyote may be served with process through its registered Department of Transportation, Federal Motor Carrier Safety Administration ("FMCSA") registered agent, Ms. Diana McNamara, 426 Westport Avenue, #1007, Norwalk, CT 06851.

5. At all times relevant hereto, Defendant Coyote was and now is one of the largest global logistics companies in the world, providing freight transportation and related logistics and supply chain services, including full truckload ("FTL") and less-

than-truckload ("LTL") transportation of goods in interstate commerce, as well as freight consolidation and warehousing.

6. At all times relevant hereto, Coyote was engaged in business and held itself out to the general public as: (a) a common carrier of goods by motor carriage in interstate commerce; and/or (b) a freight forwarder and/or full-service logistics company that provides transportation of property for compensation in the ordinary course of its business, that assembles and consolidates (or provides for assembling and consolidating) shipments, performs or provides for break-bulk and distribution operations of shipments, assumes responsibility and control for the transportation of property from place of receipt to destination, and uses its equipment and/or third-party interstate motor carriers for such transportation.

7. At all times relevant hereto, RXO was and now is a business entity organized and existing under Delaware law, with an office and place of business at 11215 North Community House Road, Charlotte, North Carolina 28277. RXO may be served with process through its registered agent, Registered Agent Solutions, Inc., 838 Walker Road Suite 21-2, Dover, Delaware 19904.

8. On or about September 16, 2024, RXO acquired the liabilities and assets of Coyote, as successor-in-interest.

9. At all times relevant hereto, RXO, as the successor-in-interest of Coyote, was and now is one of the largest global logistics companies in the world, providing

freight transportation and related logistics and supply chain services, including full truckload ("FTL") and less-than-truckload ("LTL") transportation of goods in interstate commerce, as well as freight consolidation and warehousing.

10. At all times relevant hereto, RXO, as the successor-in-interest of Coyote, was engaged in business and held itself out to the general public as: (a) a common carrier of goods by motor carriage in interstate commerce; and/or (b) a freight forwarder and/or full-service logistics company that provides transportation of property for compensation in the ordinary course of its business, that assembles and consolidates (or provides for assembling and consolidating) shipments, performs or provides for break-bulk and distribution operations of shipments, assumes responsibility and control for the transportation of property from place of receipt to destination, and uses its own equipment and/or third-party interstate motor carriers for such transportation.

11. At all times relevant hereto, LIV was and now is a business entity organized and existing under Illinois law, with an office and place of business at 101 Royce Road, No. 16, Bolingbrook, Illinois 60440. LIV may be served with process through its registered FMCSA agent, Mr. Christopher Angle, 57 Morse Pl., New Haven, CT 06512.

12. At all times relevant hereto, LIV was and now is a common carrier of goods by motor carriage in interstate commerce that includes transportation of cargo by flatbed trucks.

## JURISDICTION AND VENUE

13. This Honorable Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1337 as this action arises from the transportation of goods by motor carriage in interstate commerce and is governed by the Carmack Amendment to the Interstate Commerce Act, as amended and re-codified, 49 U.S.C. § 14706 (the "Carmack Amendment"), and the amount in controversy exceeds $10,000 per bill of lading.

14. This Honorable Court also has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367(a).

15. Coyote is subject to the personal jurisdiction of this Honorable Court because it agreed to transport and deliver the Cargo via interstate commerce within and/or through Connecticut and thereby purposefully directed its activities at the forum state.

16. LIV is subject to the personal jurisdiction of this Honorable Court because it agreed to transport and deliver the Cargo via interstate commerce within and/or through Connecticut and thereby purposefully directed its activities at the forum state.

17. RXO, as the successor-in-interest of Coyote, is subject to the personal jurisdiction of this Honorable Court because it agreed to transport and deliver the Cargo via interstate commerce within and/or through Connecticut and thereby purposefully directed its activities at the forum state.

18. Alternatively, this Honorable Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000 (exclusive of interest and costs) and is between citizens of different States.

19. The United States District Court for the District of Connecticut is the proper venue for this action pursuant to 49 U.S.C. § 14706(d)(1) and (2) as defendants operate through this District and as the Incident occurred in this District.

## FACTS

20. At all times relevant hereto, Allonnia, LLC ("Allonnia" or "Insured") was and now is a bio-ingenuity company that is a distributor of SAFF products, a type of water treatment technology.

21. At all times relevant hereto, Allonnia was the shipper and/or owner of the Cargo, as well as an assured under the Policy.

22. Prior to the Incident, Coyote invoiced Allonnia for similar shipments of like cargo. All prior Coyote invoices to Allonnia listed flat freight rates for transportation, the transportation routes involved, but did not list brokerage and/or or brokerage commissions.

23.    Defendants agreed to transport the Shipment of Cargo from Mooresville, North Carolina to Sandwich, Massachusetts, as more fully described by Coyote bill of lading no. 3040935.

24.    The Cargo was tendered to defendants (and/or to their agent, servants, and/or subcontractors) at origin in good order and condition, and suitable in every respect for their intended transportation, which Defendants received, accepted, took control over, and agreed to transport by motor carriage from Mooresville, North Carolina to Sandwich, Massachusetts in exchange for the payment of freight charges.

25.    However, as fully described in Paragraph 2 herein, the Cargo was never delivered to its intended destination in Sandwich, Massachusetts.

26.    After the Incident, the Cargo was surveyed and determined to be a total loss as the result of physical damage suffered as the result of the Incident.

27.    Pursuant to an insurance claim made under the Policy, and prior to the commencement of this action, Underwriters reimbursed Allonnia for the losses at issue, subject to certain deductibles, in the amount of $1,190,000.00 and thereby became subrogated to the extent of their payment to Allonnia's rights, remedies, and claims for relief relating to the Cargo, in addition to post-loss incidental expenditures.

28.    Plaintiffs brings this action on their own behalf and, as agents and trustees, on behalf and for the interest of all parties who may be or become interested in the

Cargo, as their respective interests may ultimately appear, and Plaintiffs are entitled to maintain this action.

29. On or about December 13, 2023, Allonnia sent Notices of Claim regarding damage to the Cargo caused by the Incident to both Coyote and LIV. No defendant has agreed to indemnify Plaintiffs and/or their insurer for the amount fully described in Paragraph 27 and post-loss incidental expenditures thereby necessitating the filing of this Complaint.

**FIRST CLAIM FOR RELIEF
AGAINST ALL DEFENDANTS
(Carmack Liability under 49 U.S.C. § 14706)**

30. Plaintiffs repeat and re-allege Paragraphs 1 through 29 as if set forth at length herein.

31. Prior to the scheduling of the Shipment, Coyote and/or RXO held themselves out as capable and responsible for meeting all of Allonnia's transportation shipping needs.

32. LIV was the motor carrier for the Shipment.

33. By accepting and receiving the Cargo in good order and condition and then failing to deliver the Cargo at its destination, Defendants breached their statutory duties and obligations as common carriers and/or freight forwarders, breached their contracts of carriage with Plaintiffs, were negligent and careless in the handling of Plaintiffs' Cargo, and were otherwise at fault.

34. The loss of the Cargo was not caused by any circumstance that would give rise to a defense or exception to liability under the Carmack Amendment, such as inherent vice of the goods or acts of God, the public authority, the public enemy, or the shipper.

35. Plaintiffs have met all conditions precedent to recovery against Defendants and has performed all duties and obligations that it was required to perform and observe.

36. By reason of the premises, Plaintiffs have sustained damages as nearly as same can now be estimated, no part of which has been paid, although duly demanded, in the amount of at least $1,231,675.00 (includes the $1,190,000.00 subrogated payment, $10,000 deductible, $2,375.00 survey cost, and $29,300.00 Cargo destruction cost).

### SECOND CLAIM FOR RELIEF
### AGAINST COYOTE AND RXO
### (Breach of Contract)

37. Plaintiffs repeat and re-allege Paragraphs 1 through 36 as if set forth at length herein.

38. Coyote, and RXO as its successor-in-interest, contracted with Allonnia as capable and responsible for meeting all of Allonnia's transportation shipping needs.

39. Coyote, and RXO as its successor-in-interest, agreed to transport the Shipment of Cargo from Mooresville, North Carolina to Sandwich, Massachusetts, as more fully described by Coyote bill of lading no. 3040935.

40. Coyote, and RXO as its successor-in-interest, owed Plaintiffs' subrogor, Allonnia, a duty to perform the contract in a reasonably good and workmanlike manner, and/or in accordance with industry standards and/or accepted practices.

41. The negligent acts and/or omissions of Coyote, and RXO as its successor-in-interest, as alleged herein, breached Coyote's and/or RXO's contractual duties to Plaintiffs' subrogor, Allonnia, and did not conform to industry standards or accepted practices.

42. Coyote's and/or RXO's breach was the direct and proximate cause of the damage to the Cargo, as well as the monetary damages sustained by Plaintiffs.

43. Plaintiffs were damaged in the amount of at least $1,231,675.00 (includes the $1,190,000.00 subrogated payment, $10,000 deductible, $2,375.00 survey cost, and $29,300.00 Cargo destruction cost).

   **WHEREFORE**, Plaintiffs pray:

   (i) that process be issued against Defendants in due form of law according to the practice of this Honorable Court, citing them to appear and answer the foregoing;

(ii) that judgment be entered against Defendants, jointly and severally, in the amount of $1,231,675.00, together with costs and interest; and

(iii) for such other and further relied as this Honorable Court deems just and proper under the circumstances.

Dated:  November 21, 2024          **HILL RIVKINS LLP**
        New York, NY               **Attorneys for Plaintiffs**

By: *[signature: Charles M. Henderson, III]*

CHARLES M. HENDERSON, III
(CT31802)
45 Broadway, Suite 2110
New York, NY 10006
(212) 669-0640 - Telephone
(212) 669-0698 – Facsimile
chenderson@hillrivkins.com